T.C. Memo. 2002-147


UNITED STATES TAX COURT


WALTER J. & VIRGINIA L. WARD ET AL.,[1] Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 10598-00, 10599-00,    Filed June 11, 2002.
            10600-00, 10601-00,
            10602-00.


Walter J. and Virginia L. Ward, pro sese.

<u>Kay Hill</u>, for respondent.

---

[1]  Cases of the following petitioners are consolidated herewith:  Alaska Statewide Investors Co. Trust, Daniel A. Carvalho, Trustee, docket No. 10599-00; Great Northern Development Co. Trust, Daniel A. Carvalho, Trustee, docket No. 10600-00; Worldwide Travelers Trust, Daniel A. Carvalho, Trustee, docket No. 10601-00; Golden Nugget Investments Co. Trust, Daniel A. Carvalho, Trustee, docket No. 10602-00.

We use the words "trust" and "trustee" in our opinion for convenience only.

MEMORANDUM OPINION

VASQUEZ, Judge:  These consolidated cases are before the Court on respondent's motions to dismiss for lack of prosecution pursuant to Rule 123(b),[2] motion for partial summary judgment, and motion for damages under section 6673(a)(1).  By separate notices of deficiency, respondent determined the following deficiencies in and penalties on petitioners' Federal income taxes:[3]

Walter J. Ward (Mr. Ward) and Virginia L. Ward (together, the Wards):

| Year | Deficiency | Penalty Sec. 6662(a) |
|------|-----------|----------------------|
| 1996 | $197,521  | $39,504 |
| 1997 | 209,127   | 41,825  |

Alaska Statewide Investors Co. Trust (ASI), Daniel A. Carvalho, Trustee:

| Year | Deficiency | Penalty Sec. 6662(a) |
|------|-----------|----------------------|
| 1996 | $110,561  | $22,112 |
| 1997 | 125,944   | 25,189  |

---

[2]  Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[3]  For convenience, figures are rounded to the nearest dollar.

Great Northern Development Co. Trust (GND), Daniel A. Carvalho, Trustee:

| Year | Deficiency | Penalty Sec. 6662(a) |
|------|-----------|----------------------|
| 1996 | $110,123 | $20,025 |
| 1997 | 138,529 | 27,706 |

Worldwide Travelers Trust (WT), Daniel A. Carvalho, Trustee:

| Year | Deficiency | Penalty Sec. 6662(a) |
|------|-----------|----------------------|
| 1996 | $102,685 | $20,537 |
| 1997 | 138,394 | 27,679 |

Golden Nugget Investments Co. Trust (GNI), Daniel A. Carvalho, Trustee:

| Year | Deficiency | Penalty Sec. 6662(a) |
|------|-----------|----------------------|
| 1996 | $78,013 | $82,873 |
| 1997 | 15,603 | 16,575 |

## Background

In the Wards' notice of deficiency, respondent determined: (1) The amount the Wards could claim for their exemptions in 1996 and 1997 was reduced to zero because of the amount of their income; (2) the Wards' itemized deductions for 1996 and 1997 were decreased by $38,043 and $25,096, respectively, because they failed to establish that $24,783 for 1996 and $12,285 for 1997 were losses sustained by them and because their itemized deductions were limited because of the amount of their adjusted gross income; (3) the Wards' Schedule C, Profit or Loss From

Business, realty advertising and auto expenses for 1996 and 1997 were reduced to zero because they did not establish the expenses were paid during the taxable years and that they were ordinary and necessary to their business; (4) the Wards' Schedule C video cost of goods sold and supplies expenses for 1996 and 1997 were reduced to zero because they did not establish they were paid during the taxable years and that they were ordinary and necessary to their business; (5) the Wards' Schedule C video depreciation expenses for 1996 and 1997 were reduced to zero because they did not establish the basis of the assets, that the assets were depreciable, and that they were ordinary and necessary to their business; (6) the Wards' Schedule E, Supplemental Income or Loss, income was increased by $407,362 for 1996 and $448,253 for 1997 because (a) the Wards' trust arrangements were shams or grantor trusts, or alternatively due to assignment of income, (b) of income from a partnership, and (c) of failure to establish that $1,487 for 1996 from Video City Shepard and $4,576 for 1997 from Arctic Video City were losses the Wards sustained; (7) self-employment tax adjustments for 1996 and 1997; and (8) accuracy-related penalties for 1996 and 1997 due to negligence or substantial understatement of tax.

In the notices of deficiency issued to ASI, GND, WT, and GNI (collectively, the trusts) respondent took protective,

inconsistent positions and asserted tax on the corrected income of the trusts.

On October 12, 2000, petitioners invoked the jurisdiction of this Court by timely filing petitions. At the time they filed the petitions, the Wards resided in Anchorage, Alaska, and the trusts' mailing addresses were in Anchorage, Alaska. In the answers, respondent denied petitioners' assignments of error.

By notice dated January 18, 2001, the Court set these cases for trial at the Court's Anchorage, Alaska, session beginning June 18, 2001. This notice specifically stated: "YOUR FAILURE TO APPEAR MAY RESULT IN DISMISSAL OF THE CASE AND ENTRY OF DECISION AGAINST YOU." Although our standing pretrial order required petitioners to submit trial memoranda, they never did so.

On April 2, 2001, respondent filed a motion to consolidate for trial, briefing, and opinion the Wards' case with the cases of the trusts. On April 12, 2001, the Court granted this motion.

On April 9, 2001, respondent filed respondent's first request for admissions in each of the cases. Petitioners did not respond to the requests for admissions. Therefore, each matter of which respondent requested admission is deemed admitted. Rule 90(c). Some of these deemed admissions were:

(1) The returns attached to the requests for admissions are

true and correct copies of petitioners' 1996 and 1997 Federal income tax returns;

(2) Before 1995, Mr. Ward was a partner with Jack Ward in various partnerships that engaged in video and real property rentals;

(3) Before 1995, the Wards owned their residence at Reef Place, the Parkview Rentals, an interest in Parkview Partnership, an interest in the Video City Partnership, an interest in the Arctic Building Commercial Partnership, an interest in the Arctic Video City Partnership, and an interest in an office building;

(4) Beginning in 1995, the Wards formed various trusts and transferred their partnership and real property interests to the trusts;

(5) Around 1995, the Wards transferred their residence at Reef Place to GNI;

(6) Around 1995, the Wards transferred their interest in Parkview Rentals and the Parkview Partnership to GNI;

(7) GNI paid nothing to acquire the Wards' residence, their interest in Parkview Rentals, and their interest in the Parkview Partnership;

(8) Around 1995, the Wards transferred their interest in the Video City Partnership to ASI;

(9) ASI paid nothing to acquire the Wards' interest in the Video City Partnership;

(10) Around 1995, the Wards transferred their interest in the Arctic Building Commercial Partnership to GND;

(11) Around 1995, the Wards transferred their interest in the Arctic Video City Partnership to GND;

(12) GND paid nothing to acquire the Wards' interest in the Arctic Building Commercial Partnership and the Arctic Video City Partnership;

(13) Around 1995, the Wards transferred their interest in the office building to WT;

(14) WT paid nothing to acquire the office building;

(15) After the aforementioned transfers, the Wards' relationship to the transferred partnership interests and properties did not change;

(16) The Wards, and not the trusts, are the correct taxpayers to report the income and expenses of the transferred partnership interests and properties;

(17) Petitioners did not produce documents summonsed by the revenue agent auditing their 1996 and 1997 returns; and

(18) Although offered an opportunity to do so, petitioners did not meet with respondent's counsel for the purpose of preparing this matter for trial.

Attached to the requests for admissions, among other things, are: (1) The Wards' 1995, 1996, and 1997 tax returns; (2) the notices of deficiency; (3) several letters from the Wards to the

Internal Revenue Service (IRS); and (4) amended returns from the Wards for 1996 and 1997. In the letters to the IRS, the Wards claimed that they did not have any remuneration paid to them that was includable in gross income for 1996 and 1997--thus they did not have any gross income for 1996 and 1997--and they made various tax protester type arguments to support their claim. In the amended returns, the Wards listed the "correct amount" of their adjusted gross income, taxable income, and tax as zero.

On May 1, 2001, the Court received a motion to dismiss for mootness from the Wards. The Wards claimed that "due to a misunderstanding and misapplication of the law, the 1040 returns that were filed were inaccurate and in error," "the source of [the Wards'] income is exempted, excluded, or eliminated from gross income by law," and that they had filed amended returns correcting the error. On May 2, 2001, the Court denied this motion.

On May 7, 2001, the Court received a motion to dismiss for mootness from each of the trusts. The trusts made similar claims as the Wards; i.e., that the Forms 1041, U.S. Income Tax Return for Estates and Trusts, were filed in error and the trusts' income was exempted, excluded, or eliminated from gross income. On May 9, 2001, the Court denied these motions.

On June 4, 2001, petitioners filed a motion for continuance

and a motion for a protective order. On June 8, 2001, the Court denied these motions.

By notice dated June 7, 2001, the Court notified the parties of a change of courtroom and address for trial at the Court's Anchorage, Alaska, session beginning June 18, 2001.

On June 12, 2001, the Wards filed a motion to dismiss, claiming that the Wards were settling out of Court with the IRS and that they were planning to pay all of the taxes they lawfully owed. On June 13, 2001, the Court denied this motion.

On that same date, respondent sent the Wards a letter regarding settlement of the cases. Respondent attached a decision document and a closing agreement to the letter. Respondent's counsel provided the Wards a telephone number to call regarding their decision to settle. There is no evidence that the Wards actually pursued settlement of their case even after respondent gave them an opportunity to do so.

On June 18, 2001, these cases were called from the calendar for the trial session of the Court at Anchorage, Alaska. Petitioners failed to appear at the calendar call.

On June 25, 2001, these cases were recalled from the calendar for the trial session of the Court at Anchorage, Alaska. Petitioners again failed to appear. At this time, respondent filed motions to dismiss for lack of prosecution in each case, a

motion for partial summary judgment in the Wards' case, and a motion for damages under section 6673(a)(1) in the Wards' case.

Discussion

I.   Rule 123(b).  Dismissal

The Court may dismiss a case and enter a decision against a taxpayer for his failure properly to prosecute or to comply with the Rules of this Court.[4]  Rule 123(b).  The Court may, for similar reasons, decide against any party any issue as to which the party has the burden of proof, and the decision shall be treated as a dismissal.  Id.

When these cases were called for trial, and in respondent's motions, respondent represented that he has the burden of production regarding the penalty because the examination in these cases began after July 22, 1998, but claimed that he does not bear the burden of proof on any issue in these cases.  Sec. 7491(a), (c); Higbee v. Commissioner, 116 T.C. 438, 440 (2001).

As a general rule, the taxpayer bears the burden of proving the Commissioner's deficiency determinations incorrect.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Section 7491(a), however, provides that if a taxpayer introduces credible evidence and meets certain other prerequisites, the Commissioner shall bear the burden of proof with respect to factual issues

---

[4]  Rule 123(b) generally applies in situations where the taxpayer bears the burden of proof.

relating to the liability of the taxpayer for a tax imposed under subtitle A or B of the Code.

Petitioners failed to appear and did not introduce any evidence. Therefore, we conclude that the burden of proof is not placed on respondent pursuant to section 7491(a). Accordingly, we sustain respondent's deficiency determination regarding the Wards, and we shall dismiss the case with regard to the deficiencies in docket No. 10598-00 and enter a decision against the Wards for those amounts. Rules 123(b), 142(a); Welch v. Helvering, supra at 115.

In the motions to dismiss in the trust cases, respondent stated that he took protective, inconsistent positions against the trusts and the Wards. Respondent concedes that if we find the Wards liable for the deficiencies in their case, then there are no deficiencies in the trust cases. Accordingly, we shall enter appropriate orders and decisions based on respondent's concession.

## II. Summary Judgment

Respondent moved for partial summary judgment in the Wards' case on the issue of whether he met his burden of production with respect to the imposition of the accuracy-related penalty.

Rule 121(a) provides that either party may move for summary judgment upon all or any part of the legal issues in controversy. Full or partial summary judgment may be granted only if it is

demonstrated that no genuine issue exists as to any material fact and a decision may be rendered as a matter of law.  Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994).

We conclude that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law.

Pursuant to section 6662(a), a taxpayer may be liable for a penalty of 20 percent on the portion of an underpayment of tax due to negligence or disregard of rules or regulations or a substantial understatement of income tax.  Sec. 6662(b).  An "understatement" is the difference between the amount of tax required to be shown on the return and the amount of tax actually shown on the return.  Sec. 6662(d)(2)(A).  A "substantial understatement" exists if the understatement exceeds the greater of (1) 10 percent of the tax required to be shown on the return for a taxable year, or (2) $5,000.  Sec. 6662(d)(1).  The understatement is reduced to the extent that the taxpayer (1) has adequately disclosed facts affecting the tax treatment of an item and there is a reasonable basis for such treatment, or (2) has substantial authority for the tax treatment of an item.  Sec. 6662(d)(2)(B).

Section 6664(c)(1) provides that no accuracy-related penalty shall be imposed with respect to any portion of an underpayment

if it is shown that there was reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion. The decision as to whether the taxpayer acted with reasonable cause and in good faith depends upon all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs.

Section 7491(c) provides that the Commissioner shall bear the burden of production with respect to the liability of any individual for penalties. "The Commissioner's burden of production under section 7491(c) is to produce evidence that it is appropriate to impose the relevant penalty".[5] Swain v. Commissioner, 118 T.C. ___, ___ (2002) (slip op. at 9); see also Higbee v. Commissioner, supra at 446. If a taxpayer files a petition alleging some error in the determination of the penalty, the taxpayer's challenge generally will succeed unless the Commissioner produces evidence that the penalty is appropriate. Swain v. Commissioner, supra at ___ (slip op. at 12). The Commissioner, however, does not have the obligation to introduce evidence regarding reasonable cause or substantial authority. Higbee v. Commissioner, supra at 446-447.

The Wards are deemed to have admitted certain facts-- including the fact that the Wards, and not the trusts, are the correct taxpayers to report the income and expenses of the

_____

[5] We do not decide herein whether respondent would have met his burden of production if he had not produced any evidence when the taxpayer failed to appear for trial.

transferred partnership interests and properties.  The Wards were required to show $204,543 and $209,127 of tax on their 1996 and 1997 returns, respectively; however, they reported $7,022 and $0 of tax for 1996 and 1997, respectively.  Thus, the Wards' understatements of $197,521 and $209,127 for 1996 and 1997, respectively, exceed both 10 percent of the tax required to be shown on their return--$20,454 for 1996 and $20,913 for 1997--and $5,000.  Therefore, on the basis of the evidence, we conclude that the Wards had a substantial understatement of income tax.  They did not present any evidence indicating reasonable cause or substantial authority.  Id.  Accordingly, on this issue, we sustain respondent's determination and shall grant respondent's motion for partial summary judgment.

III. Section 6673(a)(1)

Section 6673(a) authorizes this Court to penalize up to $25,000 a taxpayer who institutes or maintains a proceeding primarily for delay or pursues a position in this Court which is frivolous or groundless.  The Wards' conduct in these cases has convinced us that they maintained these proceedings primarily for delay.  Their actions have resulted in a waste of limited judicial and administrative resources that could have been devoted to resolving bona fide claims of other taxpayers.  Cook v. Spillman, 806 F.2d 948 (9th Cir. 1986).  Their insistence on making frivolous protester type arguments indicates an

unwillingness to respect the tax laws of the United States. Accordingly, we shall grant respondent's motion for sanctions and require the Wards to pay a penalty to the United States pursuant to section 6673 in the amount of $25,000.

To reflect the foregoing,

<u>Appropriate orders and decisions will be entered</u>.